IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| EWELL RANDOLPH BUSH, JR., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | NO. 5:17-CV-11-CAR-MSH |
| Nurse FOSTER, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## **REPORT AND RECOMMENDATION**

Presently pending before the Court is Defendants Hill, Jones, Lemon, Merressee, Primus, Toby, and Webbs' Motion to Dismiss (ECF No. 34) and Defendant Foster's Motion to adopt that motion as her own (ECF No. 35).[1] For the reasons explained below, Defendant Foster's Motion to Adopt is granted and it is recommended that Defendants' Motion to Dismiss and Plaintiff's complaint be dismissed.[2]

---

[1] Defendant Foster seeks to adopt the Motion to Dismiss (ECF No. 34) filed by the other remaining Defendants as her own, specifically the sections "asserting qualified immunity, Plaintiff's failure to state a claim under 42 U.S.C. §1983 and Plaintiff's failure to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act." Def. [Foster's] Mot. to Adopt Remaining Defs. Mot. to Dismiss 2-3, ECF No. 35.

[2] The Court agrees with Defendant Foster's contention that—despite being a contract employee not entitled to representation by the Attorney General of the State of Georgia—her position and the actions alleged in this case qualify her as a state actor under §1983. Thus, the Court grants Defendant Foster's request to join in and adopt the other remaining Defendants' motion to dismiss and considers its analysis of that motion's merits applicable to all remaining Defendants.

## BACKGROUND

Plaintiff's claims arise from an injury suffered on August 26, 2016, while incarcerated at Hancock State Prison ("HSP"). Compl. 5, ECF. No. 1. Plaintiff's allegations regarding alleged medical indifference and unconstitutional retaliation are summarized below.

### I. Alleged Injury & Medical Treatment

Plaintiff alleges that he fractured his hand "bang[ing] on the shower door very hard" while attempting to notify guards that he had completed his shower. Compl. 5. Plaintiff claims he was not seen by the medical staff for ten days despite immediately telling Defendants Lemon and Jones of his injury and being told they would "call medical." *Id.* Plaintiff also informed Defendants Webb, Foster, Primus, Toby, and Hill of his injury and made "numerous sick calls" while waiting to see medical staff. *Id*. Plaintiff alleges that when "finally" seen by medical staff they ordered x-rays but it was seven days until the x-rays were completed. Compl. 7. Plaintiff states that the x-ray technician indicated his hand was indeed fractured after examining the x-ray results. *Id*. Plaintiff then saw Defendant Merressee (the "P/A" or "physician's assistant"), who claimed the x-ray results were not in Plaintiff's medical file and told Plaintiff he would "look at them and get back to [him]." *Id*.

Plaintiff alleges he then spent a month "asking to see medical and putting in sick calls" before he was seen by another "sick call nurse." *Id*. Plaintiff saw Defendant Merressee again but was told "there [was] nothing [they could] do about [Plaintiff's hand]" because "it [was] now an old fracture" and he "need[ed] to get over it." *Id*. Plaintiff was

transferred to Baldwin State Prison ("BSP") on November 8, 2016. *Id*. at 8. Plaintiff claims another x-ray was done on his hand and examined by a doctor at BSP. *Id*. Plaintiff alleges that doctor told him his hand "had not been treated in an appropriate time frame" and the bone had "grown back crooked" requiring surgery to fix it. *Id*. Plaintiff asserts that he experiences discomfort, pain, and has limited use of his hand as a result of this experience. *Id*.

## II.     Retaliation Allegations

Plaintiff's complaint also details a series of actions taken by Defendants Lemon, Primus, and Jones in retaliation for Plaintiff filing his initial grievance. Plaintiff alleges he filed an emergency medical grievance during his initial ten-day wait to see medical staff. Compl. 9. He claims he was "verbally threatened by both [Defendants] Lemon and [] Primus." *Id*. Plaintiff states that Defendant Lemon slammed Plaintiff's feeding tray "in his face" while saying "[c]racker don't you know I feed you?" *Id*. He avers that Defendant Primus removed him from his cell and said "see how easy it is for [Defendant Primus] to get you alone handcuffed where the camera cannot see you?" *Id*. Plaintiff claims Defendant Primus warned him he was "going to have to make [Plaintiff's] time in the Tier as hard as possible unless that grievance is dropped." *Id*. Plaintiff states that following that interaction, Defendants Lemon, Jones, and Primus "launched a campaign of harassment" against him that included denial of telephone use, pain medication, and medical/grievance forms and unnecessary wakeups during night shift. *Id*. at 9-10. Plaintiff claims this "campaign" caused him mental distress, left him "paranoid and scared to leave [his] cell[,]" and led to him suffering "several anxiety attacks." *Id*. at 10. He alleges that

3

a BSP psychiatrist diagnosed him as having Post Traumatic Stress Disorder ("PTSD") and a mood disorder "caused by the harassment by the defendants." *Id*.

## DISCUSSION

Defendants Hill, Jones, Lemon, Merressee, Primus, Toby, Webb, and Foster ("Defendants") filed their Motion to Dismiss (ECF No. 34) on June 26, 2017.[3] On June 29, 2017, Plaintiff was notified of Defendants' motion and his right to "amend his complaint, submit response briefs . . . [and] submit any affidavits and/or documents showing he ha[d] exhausted [available administrative remedies]." Notification of Mot. to Dismiss 4, ECF No. 37. He was warned that failure "to respond to and rebut the legal arguments" made by Defendants could "result in these statements being accepted as uncontested and correct[]" and "[t]he Court could grant judgment to Defendants and there would be no trial or further proceedings for these Defendants." *Id*. at 3-4. However, Plaintiff failed to submit any response to Defendants' motion.

Defendants argue Plaintiff's complaint should be dismissed because they are entitled to various forms of immunity and Plaintiff has not exhausted available administrative remedies or stated a claim upon which relief can be granted. Defs.' Mot. to Dismiss 1, ECF No. 34. Because the Court finds that Plaintiff did not exhaust his administrative remedies, the Court declines to address Defendants' other grounds for dismissal.

### I. Exhaustion Standard

---

[3] For the reasons noted above, the Court considers Defendant Foster party to the other Defendants' Motion to Dismiss (ECF No. 34).

Title 42, United States Code section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (internal quotation marks and citation omitted).

For an inmate to exhaust his administrative remedies, he must complete the grievance process *prior* to a § 1983 suit. *See, e.g., Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) ("[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit") (emphasis added). The relevant date for determining whether the administrative remedies are exhausted is the date on which a plaintiff files his initial complaint—not an amended or recast complaint. *See Smith v. Terry*, 491 F. App'x 81, 83-84 (11th Cir. 2012) ("The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint."). An inmate also "must '[c]ompl[y] with prison grievance procedures[]'" to exhaust administrative remedies. *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

The argument that a plaintiff has failed to satisfy section 1997e(a) is properly raised in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) ("[E]xhaustion should be decided on a Rule 12(b) motion to dismiss[.]"). Furthermore, since dismissal for failure to exhaust is not an adjudication on the merits, the Court can resolve factual disputes using evidence from outside the pleadings. *Id.* at 1376.

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Id.* If, taking plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed. *Id.* "If the complaint is not subject to dismissal at the first step . . . , the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* The defendant bears the burden of proof during this second step. *Id.*

## II. Plaintiff's Failure to Exhaust

Plaintiff's claims against Defendants can be dismissed in the first step of the exhaustion analysis because the undisputed facts show that Plaintiff has failed to exhaust his administrative remedies.[4] Defendants contend that Plaintiff's claims are subject to dismissal because he failed to comply with the procedural rules of the Georgia Department of Correction's (GDOC) grievance process which apply to all inmates. Defs.' Mot. to

---

[4] There is no conflict in the relevant facts alleged in Defendants' motion to dismiss and Plaintiff's complaint. Plaintiff was notified of Defendants' motion but did not submit any response to it.

Dismiss 9. Defendants claim that Plaintiff 1) initiated this action before the deadline for issuing a decision on his grievance appeal had passed and 2) never filed a grievance relating to the retaliation claims included in his complaint. *Id*. at 9-11. The Court finds that the uncontested facts show Plaintiff failed to exhaust.

Defendants assert the following facts related to Plaintiff's failure to exhaust and show that Plaintiff failed to fully exhaust his medical indifference claims. None of the factual assertions in Plaintiff's complaint contradict those made by Defendants regarding exhaustion. HSP follows the GDOC's Standard Operating Procedures (SOPs) regarding grievances. Foston Aff. ¶¶ 3-5, ECF No. 34-2. The SOPs mandate that an inmate must follow a two-step process in order to exhaust his remedies and: (1) file an original grievance no later than ten days from the date of the incident giving rise to the grievance; and (2) file an appeal to the Central Office. *Id.* ¶ 12 & Ex. A-1 at 8, ECF No. 34-3. A grievance can only address a "single issue/incident." Ex. A-1 at 8. If a grievance is rejected by the warden without processing, a notice of that rejection must be provided to the inmate. *Id*. at 9. The inmate may then appeal the rejection to the central office within seven days. *Id*. at 10. If a grievance is processed, a warden has forty calendar days within which to respond but one ten-day extension may be granted. *Id*. at 11. An inmate may file an appeal after the warden issues a decision or after the time allowed for the warden to make his decision expires. *Id*. An inmate's appeal must be responded to within one hundred days by the GDOC Commissioner or his/her designee. *Id*. at 13.

Plaintiff's only recorded grievance related to medical treatment was filed on September 6, 2016, and denied on October 25, 2016. Foston Aff. ¶¶ 27-28 & Ex. A-2 at

7

2, ECF No. 34-4. Plaintiff filed an appeal of that denial on October 27, 2016. Foston Aff. ¶¶ 28. According to the SOPs, the Commissioner had one hundred calendar days from October 27, 2016, to deliver a decision on that appeal. Ex. A-1 at 13. Thus, the Commissioner's deadline was February 4, 2017. The response to Plaintiff's grievance appeal was delivered on February 23, 2017.[5] Ex. A-4, ECF No. 34-6. Plaintiff signed his Complaint on December 29, 2016, and it was received by the Court on January 10, 2017. Compl. 6. In his complaint, Plaintiff stated that he presented his complaints as a grievance but provided no grievance number, grievance receipt, or date. *Id*. at 3. He noted—where prompted by the standard complaint form—that he had appealed the initial denial of his grievance but had "not received the results of the appeal." *Id*. at 4.

The undisputed facts described above show that Plaintiff failed to fully exhaust his only grievance relating to the claims he made in his complaint. *Smith v. Terry*, 491 F. App'x 81, 82 (11th Cir. 2012) (finding a failure to exhaust where a prisoner plaintiff had not received the Commissioner's denial of his appeal nor waited the requisite time allowed to receive such a denial). Therefore, the Court has only conducted the first step of an exhaustion analysis and recommends that Plaintiff's complaint be dismissed for failure to exhaust administrative remedies.

---

[5] The Court notes that Defendants admit to failing to adhere to their own grievance procedures by delivering the response to Plaintiff's appeal past the procedural deadline to do so. However, Plaintiff's initiation of this suit before the February 4, 2017, is what renders his administrative remedies unexhausted.

## CONCLUSION

For the reasons explained above, Defendant Foster's motion to adopt the other remaining Defendants' Motion to Dismiss (ECF No. 35) is granted and it is recommended that the Defendants' Motions to Dismiss (ECF No. 34) be granted. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. The district judge shall make a *de novo* determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 9th day of February, 2018.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE